IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| A.K.H.,[1] | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 4:24-CV-1263-BR |
| | § | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION

Plaintiff filed this action *pro se* for judicial review of a decision by the Social Security Administration (the "Agency") to deny benefits under the Social Security Act. (ECF 1). On July 11, 2025, the undersigned[2] converted a motion to dismiss filed by the Defendant, the Commissioner of Social Security, into one for summary judgment, granted it, and entered final judgment. (ECF 13, 14). On July 16, 2025, Plaintiff filed her Motion for Reconsideration, moving the Court to amend its prior Order, deny Defendant's motion, and withdraw judgment. (ECF 15). Defendant did not respond. *See* N.D. Tex. Civ. R. 7.1(e) ("A response and brief to an opposed motion must be filed within 21 days from the date the motion is filed."). Having considered Plaintiff's arguments and applicable law, for the following reasons, Plaintiff's Motion is DENIED.

---

[1] It is the undersigned's practice to identify the plaintiff using only the first and last initial in filings in social security disability cases. This ensures that the public maintains access to the opinions (in compliance with Rule 5.2(c)(2)(B) of the Federal Rules of Civil Procedure and the E-Government Act of 2002) while still protecting the privacy of non-government parties' identities within the opinion.

[2] Pursuant to the Northern District of Texas Special Order No. 30-350 (Sep. 11, 2023), this case was originally assigned to the undersigned United States Magistrate Judge to serve as presiding judge, with parties instructed to inform the Court if they intended to withhold consent to disposition by magistrate judge. (*See* ECF 2, 3).

I. **APPLICABLE LAW**

The law controlling the disposition of this case was detailed by the Court's July 11, 2025 Memorandum Opinion and Order, and the discussion made there will not be repeated here. (*See* ECF 13 at 2–4). Plaintiff's Motion was filed under Federal Rule of Civil Procedure 59(e), which permits motions to alter or amend judgment within twenty-eight days after the judgment was entered. FED. R. CIV. P. 59(e). Such motions toll the sixty-day appeals window, providing District Courts an opportunity to review their own orders and judgments. FED. R. APP. P. 4(a)(4)(A)(iv); *see also id.* at 4(a)(1)(B) (allowing a notice of appeal within sixty days from judgment in suits to which the United States, its agencies, or its officers are party); *accord Wilmington Sav. Fund Soc'y v. Myers*, 95 F.4th 981, 982 (5th Cir. 2024) (per curiam).

Judicial precedent in the Fifth Circuit allows a Rule 59(e) motion to be granted only to correct "manifest errors of law or fact" or to address newly discovered evidence or intervening changes in the controlling law. *Rollins v. Home Depot USA, Inc.*, 8 F.4th 393, 396 (5th Cir. 2021) (citing *Faciane v. Sun Life Assurance Co. of Canada*, 931 F.3d 412, 423 (5th Cir. 2019) and *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 567–68 (5th Cir. 2003)). Such motions will not be granted on grounds that could, and should, have been raised earlier, nor to correct mistakes by the parties that were within their reasonable control. *Id.* at 396–97.

Plaintiff's Motion also invokes Federal Rule of Civil Procedure 60(b), which permits courts to grant relief "on motion and just terms . . . from a final judgment, order, or proceeding" for five enumerated reasons or for "any other reason that justifies relief." FED. R. CIV. P. 60(b)(1)–(6). Here, the most relevant enumerated ground is "mistake, inadvertence, surprise, or excusable neglect." *Id.* at 60(b)(1). When the rule was originally adopted, it was limited to covered conduct (i.e., the mistake, excusable neglect, etc.) on the part of the moving party, but it was subsequently amended to clarify that covered conduct by any actor could qualify under the rule, if the conduct

constituted grounds to grant relief on just terms. *See Kemp v. United States*, 596 U.S. 528, 534–35 (2022).

The Fifth Circuit has clarified that the standard under Rule 60(b) is an equitable one, but is "not wholly open-ended." *Trevino v. City of Fort Worth*, 944 F.3d 567, 571 (5th Cir. 2019) (citing *Pryor v. U.S. Postal Serv.*, 769 F.2d 281, 287 (5th Cir. 1985)). "Gross carelessness is not enough. Ignorance of the rules is not enough, nor is ignorance of the law." *Pryor*, 769 F.2d at 287.

Courts in the Fifth Circuit evaluate Rule 60(b) motions using a list of principles ultimately drawn from the landmark legal treatise, Moore's Federal Practice and Procedure:

> (1) That final judgments should not lightly be disturbed; (2) that the Rule 60(b) motion is not to be used as a substitute for appeal; (3) that the rule should be liberally construed in order to achieve substantial justice; (4) whether the motion was made within a reasonable time; (5) whether if the judgment was a default or a dismissal in which there was no consideration of the merits the interest in deciding cases on the merits outweighs, in the particular case, the interest in the finality of judgments, and there is merit in the movant's claim or defense; (6) whether if the judgment was rendered after a trial on the merits the movant had a fair opportunity to present his claim or defense; (7) whether there are intervening equities that would make it inequitable to grant relief; and (8) any other factors relevant to the justice of the judgment under attack.

*Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir. Unit A Jan. 1981) (citing *United States v. Gould*, 301 F.2d 353, 355–56 (5th Cir. 1962); *see also Ruiz v. Lumpkin*, 653 F. Supp. 3d 331, 337 (N.D. Tex. 2023) (Godbey, C.J.) (collecting cases).

## II.   ANALYSIS

As noted in the Court's previous Order, Defendant's motion to dismiss Plaintiff's complaint was converted into one for summary judgment because Defendant attached evidence to the motion that was not included in the pleadings. (*See* ECF 13 at 5). Specifically, Defendant filed a declaration from an official employed at the SSA, a copy of the most recent unfavorable decision by an Administrative Law Judge (an "ALJ"), and a copy of the notice that the decision that was being upheld by the Social Security Appeals Council. (ECF 11 at 10–38). That evidence showed

that the Appeals Council issued its decision October 17, 2024, and that Plaintiff did not request for the Agency to extend the deadline for her to challenge the decision in court. (*See id.* at 12). Plaintiff supplemented that record with evidence showing that she did not receive the notice from the Appeals Council until Friday, October 25, 2024, and that she deposited her judicial Complaint with the United States Postal Service on Monday, December 23, 2024. (ECF 12 at 1–2).

As explained in the Court's previous order, the sixtieth day after Plaintiff received the Appeals Council's letter was Tuesday, December 24, 2024. (*See* ECF 13 at 6). Because Plaintiff's Complaint was not filed until it was received by the Court on December 27, she did not commence this lawsuit within the sixty-day period allowed by statute. (*See* ECF 1); *see also* 42 U.S.C. § 405(g). Plaintiff's Motion sets forth multiple arguments for the undersigned to reconsider the prior judgment and to equitably toll Plaintiff's filing deadline. (ECF 15 at 2–3).[3]

Plaintiff's first argument is that the postmark on the letter from the Appeals Council shows October 21, 2024, indicating that though the letter issued on Thursday, October 17, it was not mailed until the following Monday. (*See* ECF 15-6 at 1). Plaintiff also demonstrated this discrepancy to the Court in her original brief. (ECF 12 at 1). The Court did not address the letter postmark in the prior Order, because the latest date from which Plaintiff's limitations period could be calculated is the date on which she actually received the letter (October 25, 2024), and her Complaint was untimely even from that latest date. *See* 42 U.S.C. § 405(g); (*see also* ECF 15 at 5 ("Plaintiff believed the deadline began after receipt on October 25, 2024[.]").[4]

---

[3] The Court's electronic case filing system ("ECF") appended numbers to Plaintiff's Motion and brief that do not match the internal page numbers of either document, due to title pages for each that were excluded from the internal page numbers but included in the numbering by ECF. Citations in this Order are to the page numbers generated by ECF.

[4] As noted in the Court's previous Order, the Social Security Administration, absent a showing to the contrary, presumes that an applicant will receive notice by the fifth day after it is sent. (*See* ECF 13 at 2); *see also* 20 C.F.R. § 422.210(c). The Administration calculates this from the issue date of the notice, not the postmarked date, which is dependent on the parcel carrier delivering the notice; however, even if Plaintiff had not indicated the date on which

Plaintiff argues that the discrepancy, however, indicates misleading conduct by the Agency, and in a similar vein argues that the instructions she received from the Agency "did not clarify federal filing rules, leading Plaintiff to" miscalculate her filing deadline. (ECF 15 at 5–6). Plaintiff compares her situation to *Bowen v. City of New York*, 476 U.S. 467 (1986) and concludes that equitable tolling is justified due to agency misconduct.

In *Bowen*, the Agency had adopted a secret policy of presuming a person who did not meet any particular listed impairment was capable of gainful employment. *Bowen*, 476 U.S. at 474. This secret policy was never published and was used to deny benefits without completing a full evaluation, and in both regards, the policy violated the law. *Id.* at 474–75. Because the Agency kept this policy secret, claimants who had their applications denied due to the policy had no way of knowing the nature of the legal error they needed to challenge in court. *Id.* at 475. The Supreme Court found this to be an extraordinary circumstance beyond the control of the applicants, and equitably tolled the deadline for those plaintiffs in the case who had not joined the suit within sixty days after receiving notice of their unfavorable decision. *Id.* at 480–82.

The undersigned does not find the instant case to be comparable to *Bowen*. It is true that proceedings before the Agency are inquisitorial, rather than adversarial; the role of the Agency and its ALJs is not to compete with applicants, but is rather to fairly conduct the administrative processes established by law. *Carr v. Saul*, 593 U.S. 83, 89–90 (2021); *accord* 20 C.F.R. § 404.900(b) *and* SSR 13-1p, 2013 WL 633939, *2. However, the undersigned is not aware of any

---

she received the notice (October 25, 2024), and even if the Administration calculated its five-day presumption from the date the notice was postmarked, the sixty-fifth day after October 21, 2024 was Wednesday, December 25, 2024, such that Plaintiff's December 27 Complaint would still not have been timely filed.

duty on the Agency to educate applicants in the rules or procedures for federal litigation.[5] The fact that the Agency did not do so for Plaintiff in this case does not constitute an extraordinary circumstance outside Plaintiff's control that prevented her from meeting her deadline.

Plaintiff's next argument is that her lack of access to electronic filing, together with her physical and mental limitations, prevented her from timely filing. (ECF 15 at 5–6). Plaintiffs proceeding *pro se* are not eligible to register for electronic filing until after they have appeared in this Court once by a paper filing; Plaintiff asserts that her mental and physical disabilities "prevented hand delivery, leaving mail as the only option." (*Id.* at 6). Plaintiff mailed her Complaint before the deadline, but it was not delivered until after the deadline. (*Id.*). This, she argues, qualifies as excusable neglect justifying relief from the judgment of the Court under Rule 60(b)(1). (*See* ECF 15 at 7).

As noted above, however, ignorance of the law or the rules does not qualify as the kind of mistake or excusable neglect that justifies relief from judgments under Rule 60(b). *Pryor*, 769 F.2d at 287. Moreover, the equities of this case do not justify disturbing the finality of the Court's judgment; Plaintiff's case has been extensively litigated administratively prior to the instant case. She has had two telephonic hearings[6] before administrative law judges, and the decisions of each of those judges was reviewed by the Appeals Council at the Agency. (*See* ECF 11 at 17 ("This case is before me on remand from the Appeals Council.") *and id.* at 34). In other words, the merits of Plaintiff's case have not gone wholly unconsidered because of the judgment against her.

---

[5] On the contrary, as noted in the Court's previous Order, the law places the burden on litigants, even *pro se* litigants, to ensure their own compliance with established law and rules of procedure. (ECF 13 at 6–7) (citing *Howland v. Quarterman*, 507 F.3d 840, 845 (5th Cir. 2007)).

[6] The undersigned acknowledges that Plaintiff challenges the sufficiency of her administrative proceedings, including among other things, for denying her an in-person hearing and an in-person consultative examination. (*See* ECF 1 at 3). The Court is not presently ruling on any alleged procedural defects on the part of the Agency.

The strict equitable analysis of this case under Rule 60(b) is reinforced by the very reason that compelled the Court's judgment in the first place; Plaintiff's Complaint was time-barred because it was filed after the United States federal government's waiver of sovereign immunity had lapsed. As explained in the Court's prior Order, that waiver can only be extended by equitable tolling in cases where a litigant has diligently pursued their rights, but has been obstructed by an extraordinary circumstance beyond their control. *Accord Vuoncino v. Forterra, Inc.*, 140 F.4th 200, 208 (5th Cir. 2005). The Court cannot substitute that equitable standard for a more relaxed one now that judgment has been entered in the case; those would not be "just terms." *See* FED. R. CIV. P. 60(b).

Finally, Plaintiff points to a presidential action that declared December 24, 2024 a holiday for federal executive employees, including postal employees. (ECF 15 at 7–8); *see* Providing for the Closing of Exec. Dep'ts and Agencies of the Fed. Gov't on Dec. 24, 2024, 89 Fed. Reg. 104857 (Dec. 18, 2024). As noted above, December 24, 2025 was Plaintiff's deadline to file her Complaint, which she mailed by ordinary post on December 23, which the Post Office postmarked on December 24, and the Clerk's Office received and filed on December 27, 2025. (*See* ECF 1 at 11). For the cited Executive Order to qualify as an extraordinary circumstance that prevented filing by the deadline, the Court would have to presume that the United States Postal Service would have otherwise delivered Plaintiff's Complaint overnight, and there is no evidence of that.

Alternatively, Plaintiff could argue that the Executive Order established her deadline as a legal holiday under the meaning of Rule 6, but this argument would also be unavailing. *See* FED. R. CIV. P. 6(a)(1)(C) ("[I]f the last day [of a period] is a . . . legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday."). Assuming without deciding that December 24, 2024 qualified as a legal holiday due to the cited presidential

action, Plaintiff's limitations period would extend only to December 26—the day before her Complaint was received and filed. *See id.* at 6(a)(6)(A)–(B) (defining "legal holiday"). The simple, unpleasant reality is that the law required Plaintiff to mail her Complaint earlier than she did.

As a final note, the undersigned acknowledges the seriousness of this matter for Plaintiff. In her own words, "This case has endured for over seven years since Plaintiff applied for disability benefits . . . . Plaintiff pleads with the Court to hear this case on its merits rather than dismiss it over a minor untimeliness." (ECF 15 at 8–9). As noted above, however, the merits of Plaintiff's case have been extensively evaluated by the Agency, which was empowered by law to do so and which had the benefit of Plaintiff's full medical record.[7] When deciding whether to waive sovereign immunity beyond what Congress has authorized, the Court must take seriously the risk of succumbing to judicial bias.

As pointedly noted by Judge James Ho, himself reflecting on remarks by Justice Clarence Thomas, courts must carefully cleave to established principles when exercising discretion, and this is especially true in equitable matters. *See Rollins*, 8 F.4th at 398. When exercising discretionary powers of equity, courts must make choices that will necessarily benefit or harm some party before them, and it is vital those decisions be made without partiality. "It would surely be unacceptable, for example, if courts granted motions for extensions of deadlines only for prosecutors and not for criminal defendants." *Id.*

---

[7] The Court notes again Plaintiff's allegations of procedural inadequacy in her administrative proceedings, this time specifically her concern that the Agency excluded Plaintiff's newest medical records; while again refraining from ruling on these allegations (*see supra* n.6), the Court notes that records pertaining to Plaintiff's disability after June 30, 2020 were excluded from consideration by the Agency and would also be excluded from consideration by the Court, because at the time of the application for disability benefits that is the subject of this suit (as opposed to any subsequent renewed application Plaintiff might submit to the Agency), Plaintiff was only insured by the Social Security Act for disabilities before that date. (*See* ECF 11 at 18); *see also* 42 U.S.C. § 414 (establishing coverage requirements).

The limitations period on the waiver of sovereign immunity in the Social Security Act serves an important function in promoting efficient resolution of claims, which is to the benefit of the Agency, all applicants, and the taxpaying public. *See Bowen*, 476 U.S. at 481–2. Courts can not "selectively" dispense from this requirement "just because they have sympathy for a particular litigant." *Rollins*, 8 F.4th at 398.

### III.   CONCLUSION

Accordingly, Plaintiff's Motion for Reconsideration (ECF 15) is DENIED. In accordance with *Wilmington Sav. Fund Soc'y v. Myers*, this Order tolls the period for any appeal of this case. 95 F.4th at 982.

IT IS SO ORDERED.

ENTERED August 14, 2025.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE